# THE PRAIRIE STATE LOAN AND BUILDING ASSOCIATION

*v.*

## LEON NUBLING.

*Opinion filed December 22, 1897.*

1. LOAN ASSOCIATIONS—*association clothing its secretary with powers of general agent is bound by his acts.* A loan association which vests its secretary with the management and control of its entire business, so as to make him, in effect, a general agent, is bound by his acts done under such extended authority.

2. SAME—*fraud by secretary—what not a cancellation of stock.* Where a member countermands his notice of withdrawal and continues to make his payments to the secretary as before, the facts that the secretary enters the stock on his books as canceled, and fraudulently causes a warrant for its withdrawal value, payable to the member's order but not endorsed by him, to be cashed by the treasurer and appropriates the money, do not amount to a cancellation of the stock.

3. SAME—*association liable to member for payments embezzled by secretary.* A loan association is liable to a member for payments on stock made to its secretary, which are appropriated by the latter, and not entered on the company's books or reported as collected, although the secretary has fraudulently caused the stock to be entered upon the company's books as canceled, and has caused a warrant for its withdrawal value to be cashed, the proceeds of which he also appropriated.

4. SAME—*one purchasing stock may rely on secretary's representations.* One purchasing stock in a loan association upon the representation of the secretary that it is for sale, and who continues to make payments thereon until the secretary absconds, may recover from the association the amount paid in by him, although the secretary had fraudulently caused the stock to appear on the books as canceled and had re-issued it to the purchaser without the company's knowledge, and never turned in any of the proceeds of the sale or any of the subsequent payments.

5. SAME—*when association cannot claim benefit of statute as to amount in treasury applicable to withdrawals.* A loan association which defends a suit to recover payments made on stock on the ground that the complainant was not a member of the association when making the payments, cannot complain that the decree against it orders execution to issue without regard to the provision of the statute concerning the amount in the treasury available to pay claims of withdrawing members.

*Prairie State Building Ass.* v. *Nubling,* 64 Ill. App. 329, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Appellant is a corporation duly organized under the Homestead Loan Association act. In January, 1886, Leon Nubling became a member of the association, subscribing for twenty shares of the stock of said association of the fifteenth series.   Upon these twenty shares he made regular payments of $10 per month to one Jacob David, the secretary, until July 14, 1892, when David departed from the State, having embezzled the funds of the association to a considerable amount.   All of appellee's transactions were had with David, and all payments were made to David, at appellee's residence.   It appears that in June, 1889, appellee wished to purchase a lot, and told David that he needed his money and desired to withdraw from the association, and David called for and appellee delivered to him a pass-book, and possibly a certificate of stock, appellee being informed that it would be necessary for him to sign the certificate of stock to get his money. About two weeks after, Nubling went to David and informed him that he had decided to remain in the association, and David answered, "All right; keep it up; it is a good thing."   David then gave Nubling a new pass-book, the first entry in which was, "July 1, $300, by transfer from old book,—J. David."   All previous payments by Nubling had been entered by David in the pass-book which Nubling surrendered to David when he contemplated withdrawing, and from and after the time the new pass-book was delivered by David to Nubling the monthly payments were entered in it by David.

Prior to November 20, 1890, David told Nubling that the association had some stock on hand which it would like to sell, and finally Nubling consented to buy it. David represented to Nubling that the amount that had

been paid on the stock which the association had for sale, together with accrued profits, was $477.50, and on the 19th day of November Nubling purchased, through David, eight shares of stock, and delivered to David a check for $477.50, and David delivered to him a pass-book with an entry therein, "Transferred November 19, 1890, to Leon Nubling." From that time on, until July 14, 1892, Nubling regularly made monthly payments of four dollars on account of this last mentioned stock, such payments being made to David at the place of business of Nubling, the same as on the stock in the fifteenth series. The last mentioned eight shares of stock had been owned by one Marco, who had, just prior to its purchase by appellee from David, handed it in for cancellation to David, the secretary. The stock had been indorsed in blank by Marco, and David then received the money from Nubling and made the transfer entry in the pass-book. In addition he had treated it in the usual manner in which canceled stock would be, and had a warrant issue in the name of Marco on the treasurer of the association for the cancellation value of the stock, and though it was payable to the order of Marco, and not endorsed by him, he turned it over to the treasurer as cash. At the time when appellee had first indicated his desire to cancel his stock and withdraw, David had a warrant issue to the order of Nubling for the cancellation value of the twenty shares of stock, and although it was never indorsed by him, David turned this in to the treasurer as so much cash.

It is apparent, therefore, that the status of both these stocks was, that David had treated them on his books as canceled and had appropriated to himself the proceeds of the warrants issued for such cancellation, yet still, as between him and appellee, the stock was existing and David each month collected dues thereon, crediting the same on Nubling's pass-book but making no entry on his own books. The association books showed that both Nubling and Marco had canceled their stock and were no

longer members. Marco had received his money, but got it from Nubling through David. It is not seriously contended, and cannot be, that appellee had ever received a dollar in return. David, the secretary, having absconded, the whole contention is whether appellee or the association shall suffer by his fraud.

The master to whom the cause was referred reported finding the appellant association indebted to appellee in the full amount of his own and the Marco stock, with profits and interest thereon. The Superior Court, on hearing, approved the report and entered a decree in accordance therewith. On appeal to the Appellate Court this decree was affirmed, and by appeal the matter is here presented.

WILLIAMS & KRAFT, for appellant.

SAMUEL J. HOWE, for appellee.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

The only questions necessary to be considered in the determination of the issues in this case are, whether there was such a cancellation of the stock of appellee in this association as amounted to a bar of his right to recover the money before then paid,—a withdrawal of his membership from the association so that all payments of dues thereafter were unauthorized; and also whether or not the purchase by him from the secretary of this building association of stock presented by another party for cancellation gave him the right or title thereto.

In our view of the case the master in chancery, the circuit court and the Appellate Court have all reached the correct conclusions. The record in this case shows that the twenty shares of stock held by appellee were presented for cancellation at one time, but in fact never were canceled. The by-laws of appellant provide as

follows: "All members desiring to withdraw from the association, as provided by section 6 of the act under which this association is organized, shall be entitled to receive the amount of dues paid by them, less all fines and other charges, and also receive such shares of the profits then accrued as the board of directors may from time to time determine: *Provided*, that no member withdrawing from the association within one year after having joined the same shall be entitled to any interest or profits." Appellee did not receive, after the presentation of his stock, all dues paid by him, together with any portion of the profits then accrued, but before any cancellation of his stock was made he notified the association, through its proper officer, the secretary, that he would not withdraw. He had a perfect right to do this at any time before the cancellation was actually consummated. The mere facts that about that time a fraudulent secretary caused a warrant to be drawn to appellee's order for the withdrawal value of this stock, and without procuring the indorsement of appellee was able to induce this association to cash the warrant, were not such facts as operated to cancel appellee's stock.

Common knowledge of the general conduct and management of associations known as building associations shows that in the majority of cases the secretary of such an association has largely the control of the details of its business. He generally possesses the confidence of its members and patrons, who largely rely on him. Many such associations, under our statute, transact a financial business far in excess of the ordinary bank. Its directors should certainly be held to an ordinary degree of diligence and watchfulness over the interests of the association and over those who handle its funds. There having been no withdrawal or cancellation of this stock, it follows that all payments of dues made to an officer of the association authorized to receive them created an additional liability from the appellant association to ap-

pellee.    The fact that the secretary of this association, either fraudulently or otherwise, did not report the collection of these monthly payments of dues to the association does not release the association.    As long as he was secretary he was, under the by-laws, the proper officer to receive such payments, and payment to him was to the association.

It is contended that appellee acquired no title to the Marco stock.    The Marco stock was not canceled, as the warrant for such purpose was never delivered to Marco nor did he indorse it.    It was a fraud on the part of the secretary to appropriate the amount of the warrant to himself.    Appellee issued his check for the stock, and the proper representative of the appellant association, who also acted for Marco, received it and assigned the passbook to appellee, who continued to make payments on this stock.    In this association, as in many others of like class, great confidence seems to have been reposed in the secretary previous to his default.    Endlich, in his work on Building Associations, (par. 174,) says that the secretary is often the general agent of the association, and often is, in point of fact, the manager of its entire business.    Where such control and management are vested in him, even tacitly, the association will be bound by his acts under such extended authority.

Complaint is made that the decree of the Superior Court ordered execution against the association, when the statute provides that only one-half the funds in the treasury shall be applicable to the demands of withdrawing stockholders.    There is no merit in this objection.    Appellant denied that appellee was a member of its association or had any right to withdraw.    After the decree appellee stood in the relation of a creditor, rather than a withdrawing member.

The judgment of the Appellate Court for the First District is affirmed.    *Judgment affirmed.*