# WOODWARD *v.* NELLIGAN.

---

BUILDING ASSOCIATIONS; PARTNERSHIP; CORPORATIONS; ESTOPPEL.

1. An unincorporated building association is a partnership, the so-called directors being the managing partners, and the so-called stock-holders, the general partners; and the powers exercised by the former are not to be measured by the strict rule applying in the case of directors of a corporation, notwithstanding their analogy.

2. The powers of officers and managing agents of a corporation may be extended by practice on their part and continued acquiescence on the other, so as to bind the corporation, provided that such powers are such as might be conferred upon or exercised by an officer within the limits of the powers conferred by law upon the corporation itself.

3. A special or limited partnership, unlike a corporation, may become bound in respect of matters foreign to its original objects and express powers, by the customary practice of all the partners, or by that of one or more managing partners, with the apparent knowledge and acquiescence of all of the others concerned.

4. The payment by a member of an unincorporated building association of his debt due the association to its secretary, who thereupon delivers to the member the bond and deed of trust which had been given to secure the debt and the certificate of title which had accompanied them, will bind the association and entitle the member to a release of the deed of trust, although the secretary acted beyond the scope of his powers as defined by the articles of association, where it appears that for nearly fourteen years by the sufferance of the directors and the apparent acquiescence of the members generally the secretary had become practically the general manager of the association, and that for eight years after such member ceased paying his dues the directors made no effort to collect them or to enforce payment of the debt; and also where it appears that the association is in process of liquidation with no "live" stockholders or members except the directors themselves, or creditors whose rights might be affected.

No. 1172. Submitted March 14, 1902. Decided April 4, 1902.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia granting the relief sought, in a suit in equity, for the release of a deed of trust. *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit by the heirs-at-law of David Nelligan, deceased, to compel the release of a deed of trust executed by said Nelligan to secure a loan from the Second Working Men's Building Association of the District of Columbia.

The defendants in the bill are the two trustees in said instrument, and the president, treasurer, and directors of the said association, which is now in process of liquidation.

The said association was organized about April, 1884, for the objects ordinarily sought by building associations, under articles styled a constitution, but was not incorporated.

By the terms of this constitution, monthly meetings were to be held at a fixed hour, fifteen members constituting a quorum.

There was a secretary who, in addition to the ordinary duties of such an officer, was required to keep an account

with each stockholder; to keep all books, papers, stock-holders' bonds, and deeds; to renew insurance at expense of defaulting stockholders; to make return of all delinquents, and furnish a detailed statement of finances for the board of directors, etc. John T. Lynch was secretary from time of organization until late in 1898, when he absconded.

There was also a treasurer whose duty it was to receive all money paid in, to pay out moneys when properly directed, and who was required to keep an account of receipts and disbursements, and to make a monthly exhibit of same to the directors. Secretary and treasurer were *ex-officio* directors. Attorneys, trustees, and finance committee were also provided for, and it was made the duty of the latter to examine and report in writing semi-annually the state of the accounts of both secretary and treasurer. Trustees were to receive conveyances in trust and release same after the secretary and the treasurer should have first executed the same.

Stockholders were required to make monthly payments on stock, commencing Wednesday, April 9, 1884. Failure to pay monthly dues subjected the stockholder to a fine of 5 per cent. Stockholders were permitted to bid for loans of money and were required to pay $1 per month per share in addition to monthly dues; upon failure to pay for four months it became the duty of the directors to order the trustees to foreclose the deeds of trusts that were required as security.

Provision was made for canceling stock upon payment of loans, and for withdrawals upon terms and under certain conditions.

The board of directors were given power to enact by-laws, not in conflict with the constitution.

Nelligan became a member and, on May 17, 1886, obtained a loan of $525 on his shares and executed a bond in the penal sum of $2,000 secured by deed of trust upon certain lands in the District. He obtained some further advances so that according to the account rendered on April 19, 1890, he owed the association $849.77. This account

was made out by John T. Lynch, the secretary, who was a nephew of Mrs. Nelligan.

Nelligan sold another tract of land, completing the transaction on the last-named date, and his wife, who acted for him, turned over the net proceeds to Lynch who was present in the office of the attorney where the transaction had been closed. The sum so delivered amounted to more than the debt due the association. Mrs. Nelligan said: "Here John, take your money out of here and give the balance to your uncle Dave when you are done taking your money." By "your money," was meant the amount due the association. Lynch soon thereafter delivered to Nelligan the bond, and deed in trust securing his loan, and the certificate of title that had accompanied them. David Nelligan died December 24, 1892. The secretary and treasurer each kept books showing the entries of monthly payments made by members. Both contain blank spaces under the name of Nelligan for the entry of monthly payments to September, 1891; but the last entry of cash received occurs under date of September, 1889.

Mrs. Nelligan, who in the meantime removed to Atlantic City, heard nothing more of the matter until October 30, 1898, when she was notified by the association and payment demanded. During 1898, it was discovered that Lynch was a defaulter. There was a great deal of evidence tending to show that during the time that he was secretary, from 1884 to 1898, Lynch had issued deposit, or memorandum, books to stockholders in which their payments were entered, and that he frequently received payments at his house and entered the same in the books. He sat at the table with the treasurer at monthly meetings and assisted in receiving money and making entries. Some of the books show that almost all of the entries were made by Lynch, and it does does not appear that he failed to deliver the money therefor to the treasurer.

One witness testified to receiving a statement from Lynch, on March 8, 1894, of her loan amounting to $660.60, which

she paid to him on the same day. She produced the statement duly receipted by Lynch, and testified that he sent her by mail, her bond, deed of trust, and a release of the same properly executed. It appears from the testimony generally that up to 1898, Lynch practically controlled the affairs of the association and had the confidence of stockholders and directors. One of the latter in testifying, said: "We had no head or tail to our association while he was absent."

Several of the directors, including the treasurer, testified on behalf of the association, in some points contradicting, and in others attempting to explain, evidence relating to the manner in which dues were received and entries made in pass-books; but none of them gave a satisfactory explanation of the failure to inquire into the conditions of Nelligan's stock and loan during the seven years that had intervened between the cessation of his payments, as shown on the treasurer's books, and the demand for payment made upon Mrs. Nelligan after the disappearance of Lynch. As the treasurer's own books showed that Nelligan ceased to pay the monthly dues under his contract for the loan in September, 1889, the directors were bound to know it also. The finance committee was said to have made its customary examinations, reports of which were printed, and yet it was not shown that they had reported the Nelligan loan as unsettled, or referred to the fact that his bond was no longer in the possession of the secretary.

The treasurer testified that he called attention of the board to Nelligan's default, some four or five months after his payments ceased, as it was his duty to do, and that the matter was mentioned several times to Lynch, who sometimes said, "why be in a hurry," and the like, and "that the security was good," that there was "plenty of live stock, live shares to settle her indebtedness." The witness also tried several times "outside of the directors' meetings," to get Lynch to settle the Nelligan matter.

Upon this state of facts the court passed a decree direct-

ing the execution of a formal release of the trust deed, from which the appeal has been taken.

*Mr. Wharton E. Lester* for the appellants.

*Mr. Leon Tobriner* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

Our conclusion from the foregoing facts agrees with that of the learned justice who presided at the hearing in the special term of the equity court.

It must be borne in mind that the association was not an incorporated institution with powers defined in a charter granted by, or under the authority of the government. It was an association formed by the agreement of certain persons embodied in articles called by them a constitution. The result was the formation of a partnership of a peculiar character, the managing partners being styled directors. The general partners, called stockholders, came in and went out at will by subscription to stock, and its retirement through payment of loans, or its withdrawal without a loan, in accordance with rules regulating the same. The powers exercised by the directors, as managers of the partnership, are not to be measured by the strict rule applying in the case of the directors of a corporation, notwithstanding their analogy. Hence, many of the decisions cited on behalf of the appellants are not directly applicable because they involve the duties and powers of corporations governed by the statutes whence they derive their authority.

Yet, even in the case of regular corporations, it is well settled that the powers of officers and managing agents may be extended by practice on their part and continued acquiescence on the other so as to bind the corporation. Clark on Corporations, pp. 489–499, and cases cited.

The powers referred to, of course, mean powers that might be conferred upon, or exercised by an officer within the limits of the powers conferred by law upon the corporation itself.

A special, or limited partnership, uncontrolled by a regulatory statute, obviously has greater latitude than a corporation which is. Hence it may become bound in respect of matters confessedly foreign to the original objects and express powers of the association, by the customary practice of all the partners, or by that of one or more managing partners, with the apparent knowledge and acquiescence of all others concerned, as appears in this case. 1 Lindley Partnership, 250, 251; 2 Idem, 822; *Shaffon's Executors,* 1 De G., M. & G. 576, 590; *Keene's Executors,* 3 Idem, 272, 280.

Herein, as shown above, we have the practices of nearly fourteen years. Notwithstanding the limited powers of Lynch, as secretary, under the original articles of association, he became practically the general manager through the sufferance of the directors, at least, or their gross negligence, and with the apparent knowledge and consent or acquiescence of the stockholders generally.

The latter changed from time to time, as we have seen, and there is nothing in the record to show that, at the time of going into liquidation, there remained any "live" stockholders or members outside of the directors themselves, who are parties to this suit. Nor has it been made to appear that there are any creditors who by virtue of that relation may have an interest in the result of this suit.

The practice that was permitted Lynch to solicit members, issue pass-books, and receive dues at any time for a great number of years, may have been recognized as beneficial to the association, for the testimony tends to show that he accounted, generally at least, for money so received. The evidence shows that the practice was recognized as a great convenience to many members who could not easily attend the regular night meetings, and naturally, therefore, become widely extended. Lynch was the custodian of all bonds, mortgages, and deeds, and it was his duty to keep accounts with borrowers and furnish statements for settlement. The evidence shows that, on one occasion at least, he received the money of a borrower and receipted

the statement, subsequently sending her the formal release of her mortgage. The directors' evidence shows that he was expected to attend to the loans, and that inquiries were not prosecuted when he offered an objection. Notwithstanding the provisions of the constitution, they did not undertake the enforcement of obligations when he informed them that loans were safe.

Under these conditions, Nelligan, having raised the money to pay his loan, asked Lynch for a statement of his indebtedness. Lynch made it out and on the same day attended the receipt of the money by Nelligan's wife, who then and there delivered it to him in payment of the sum so stated to be due. Lynch (when does not appear, but evidently soon thereafter) surrendered the bond and trust deed to Nelligan, and it was among his papers at his death. When Nelligan's payments of dues ceased, it was the duty of the directors to make inquiry, and enforce payment if his indebtedness remained unpaid, and his stock was thereby uncanceled. Without such action on their part, and notice, Nelligan, and his wife and children after his death, had no right to suspect any misconduct on the part of Lynch. They were plain people and not well informed in regard to the complete protection of their rights. Had they not been misled by what seems to be the gross negligence of the directors in leaving them in ignorance of the failure of Lynch to pay over the money, they might have been able to compel him to do so between 1890 and 1898.

Negligence of this character and its probable effect in irreparable loss to the party affected, furnish a well-established foundation of estoppel. *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, 115.

In addition to the long and inexcusable silence of the directors, we have the additional grounds of their long acquiescence, with knowledge, in the general powers of management exercised by Lynch. *Prairie State Loan Association* v. *Nubling,* 170 Ill. 240, 244, 245. In that case the association had been regularly incorporated; in the points upon which the decision turned it closely resembles this. And

the court aptly said on the pages noted above: "Common knowledge of the general conduct and management of associations known as building associations shows that in the majority of cases the secretary of such an association has largely the control of the details of its business. He generally possesses the confidence of its members who largely rely on him. * * * Its directors should certainly be held to an ordinary degree of diligence and watchfulness over the interests of the association and over those who handle its funds. * * * Endlich, in his work on Building Associations, says the secretary is often the general agent of the association, and often is, in point of fact, the manager of its entire business. Where such control and management are vested in him, even tacitly, the association will be bound by his acts under such extended authority." See also *Chicago B. Assn.* v. *Cromwell,* 65 Ill. 453, 460.

The cases most strongly relied on by the appellants are: *Morrow* v. *James,* 3 Mackey, 27, and *Van Waggenen* v. *Genesee Falls Sav. Assn.,* 88 Hun, 43. Those cases are in our opinion clearly distinguishable. The single question in each was, whether the association was bound by the payment of money to the secretary who had no authority, as members were bound to know, to receive it, and who appropriated it to his own use. There was no evidence, as in the case at bar, to show that the secretary had been permitted by the directors, or held out to members as authorized, to receive their dues; nor was there any negligence in the directors operating to the prejudice of the members so paying. Under the facts it clearly appeared that the delivery of money to the secretary was as their agent, to pay their dues to the treasurer, and not as the agent of the association duly authorized to receive payments.

The decree is right and will be affirmed with costs. It is so ordered. *Affirmed.*