## ULMAN et al. v. CLARK et al.

(Circuit Court, D. West Virginia. September 7, 1896.)

1. APPOINTMENT OF RECEIVERS—RENTS AND PROFITS OF LAND.
   Where the party moving for a receiver has a probable cause of action, a motion for a receiver will be granted, to husband the rents, issues, and profits of the land in litigation, where there is danger of their loss pendente lite.

2. SAME—EJECTMENT—ANCILLARY BILL.
   Pending an action in ejectment for the recovery of land, a bill filed for the appointment of a receiver to take charge of the royalties, rents, and profits arising from the land in controversy will be treated as an ancillary proceeding to the action at law.

3. SAME—LACHES.
   Laches should not be imputed to a party who delays to bring an action to recover land, where the adverse party had full notice of the claim of title of the party suing, unless the delay is, under all the circumstances of the case, unreasonable.

Ferguson & Flournoy, for plaintiffs.
Clark, Jackson & Reynolds, for defendants.

JACKSON, District Judge. I am asked to appoint a receiver in this cause to take charge of the royalty, rents, and profits of the land in litigation pending an action of ejectment in this court to determine the rightful title as between the claimants. The claim of the plaintiffs is that they hold the elder and a better title to the land

in controversy than the title under which the defendants claim. It is not denied by the defendants that the title of the plaintiffs is the elder one, but it is denied that the title covers the land in controversy, as claimed by the defendants, which is their main defense to this motion. It is conceded by the defendants that they operate large coal mines upon the land, and are coking coal from which there is derived an annual revenue of upwards of $30,000, and that they have already mined and taken $120,000 worth of coal from the land, and that they are still actively engaged in their mining operations, whereby the value of the property is being greatly lessened, the chief value of it being its coal fields. It appears from the pleadings in the case that there is an association known as the Flat Top Coal Land Association, whereby certain parties are associated together for the purpose of acquiring and holding large tracts of land. The title to the lands of this association are held by three trustees. Under the by-laws of the association, these trustees can do no act except under the direction and by the sanction of the board of managers appointed by the shareholders of the association; and it is also provided that these trustees are not to be personally liable for any act done by them under the sanction of this board of managers. The trustees have leased this property to certain other of the defendants named in the pleadings in this cause, for the purposes of mining coal. These lessees have placed upon the disputed property a large number of coke ovens, whereby the coal is manufactured into coke. It is alleged in the bill that, in the event the plaintiffs recover in this action, there is no one directly responsible to satisfy a judgment for damages against the defendant trustees, or the owners of the land; that it would involve one or more suits to recover a judgment for damages. It is also alleged that the shareholders of this association are of such a transitory character —or, in other words, "birds of passage"—that it would be difficult to reach them in order to enforce a claim against them. It is therefore claimed by the plaintiffs that they are entitled to a receiver, to husband and protect the rents, issues, and profits growing out of this tract of land pending this controversy: First, because there is no direct legal responsibility upon the part of any one to respond to any action for damages that they may bring; second, that the value of the property consists in its coal fields, which are being rapidly mined, and that before this litigation is disposed of a large portion of the mines may be worked out, and that the property may be greatly lessened in value, whereby imminent danger of the loss of rents and profits arise, and the revenues of the property may, to a great extent, be dissipated. In support of this motion, the plaintiffs have exhibited an apparently good title, derived under a grant from the commonwealth of Virginia, whereby the land granted became vested in the patentee, and, by several mesne conveyances from the patentee down, became vested in the plaintiffs to this action. It is claimed that, as this is the elder grant covering the land in controversy, for this reason, if no other, the plaintiffs to this action should be protected against the danger of mismanagement, loss of rents, and against the danger of an association of this character be-

coming insolvent. Opposed to this position, the defendants affirm that there is no danger of loss or mismanagement, and that they are in the possession of this property, and should not be disturbed.

It is laid down as a general principle by all the authorities that where a party moving for the appointment of a receiver exhibits an apparently good title to the property in controversy, and that there is an imminent danger of the loss of the profits and rents of the property, a receiver may be granted for the preservation of the rents and profits pendente lite. High, Rec. § 576, and the cases there cited. And such I understand to be the law as laid down in Beach on Receivers. It is not alleged in this bill that the defendants to this action are insolvent at this time, or that there is a mismanagement of the property. On the contrary, it is conceded in the bill that there is no desire to take the property out of the hands of the parties who are operating it. The only purpose and object of this proceeding is to husband the rents and profits of this property pending this litigation, so that they may be turned over to the rightful owner of this property at the termination of it. This proceeding is in the nature of an ancillary proceeding to the action at law, and has for its one object and purpose the protection of the issues of this property. As we have seen, this application does not contemplate the change of the status of the realty itself. On the contrary, it is conceded by the bill that those who are operating the property as lessees should not be disturbed in their operations. If this motion contemplated the change of the possession of this property, it would involve a far different question than the one involved in the issue upon this motion.

Numerous and various authorities have been cited by the defendants to show that the courts of equity will not entertain a motion to disturb the possession of a property pending a litigation in an action of ejectment, but such is not the motion in this case, and I do not see any valid reasons for refusing the motion asked for. There appears to be no desire upon the part of the plaintiffs to this action to interfere with the possession of the lessees of the property, but only, as I have said, to bring into the custody of the court the rents, issues, and profits of it, that they may be husbanded and held to answer the judgment at the end of the litigation of the action at law. It is said that the granting of this motion would affect the rights of the shareholders in this association, by depriving them of the revenues arising from the operation of the mines upon the land in controversy. This may be so, but is a court of equity to deny the right of parties to invoke its aid to preserve the rents and issues of a property which may be dissipated and scattered, and which may never be gathered together so as to respond to a judgment at law when obtained? Should a court permit parties who are scattered over the country—some in foreign countries, as appears in this case—to carry off the revenues arising from the rents and profits of this land, and turn over to the plaintiffs, if they obtain a judgment at law, a series of vexatious lawsuits to enable them to assert their judgment? Or, rather, is it not the duty of a court of equity, under such circumstances, to have the rents, issues,

and profits in its custody, so that at the end of the litigation it may turn them all over to the rightful owner? It may be inconvenient to, and may work a hardship upon, the shareholders in this case; but a court of equity must look to the merits and the rights of the parties involved in the questions before it for consideration, and not to the hardships that may be the result of its action in reference to the legal rights of the parties concerned.

In all the numerous cases that have been cited by the defendants in support of their objections to the granting of an order appointing a receiver, I have been able to discover but one case that is in conflict with the position now assumed. Nearly every case cited is a case in which there is an effort to take the possession of the realty out of the custody of the party in possession of it, and place it in the hands of a receiver. Such is not the case here. There is no effort or desire upon the part of the plaintiffs to this action to interfere with the subject-matter of the litigation in the ejectment case by the appointment of a receiver; but it is for the purpose of preserving from waste, loss, and destruction the rents and profits arising out of the property, so that they may, in the language of the chancellor in the Chase Case, found in 17 Am. Dec. 277, "harvest and gather the fruits until the labors of the controversy are over."

It is clear to my mind that the plaintiffs have probable cause of action against these defendants, and that the benefit to be derived from such cause of action might be lost if a receiver was not appointed, and it is no answer to this position that these parties are responsible at this time. It is no answer to it that they have property that could be sequestered at this time. The question for the court to consider is whether or not the defendants to this action may become liable, and, if liable, would they be able to respond at the end of this litigation? The peculiar relations that the trustees hold to this property, as well as the peculiar character of the association they represent, seems to me to require the court, as a matter of justice to the plaintiffs, in the exercise of a sound discretion, to protect the rights of the defendants, and to take possession of the rents, issues, and profits of this property, and have them in safe keeping until the end of this litigation. It is urged, however, that there has been unnecessary delay in this application, and that there is laches upon the part of the plaintiffs, in not instituting their suit sooner. I do not concur in this objection to this motion. The plaintiffs in this action, prior to the time the lessees entered upon the lands in controversy for the purposes of opening mines and mining coal, gave a public notice in the public press published in the county in which the lands lie, of which the defendants were advised, warning all parties not to trespass upon their lands. This notice set out and described the boundaries of the land they claimed, and, it is conceded, covered the lands in controversy. Notwithstanding this notice thus served, the parties, without making any effort or taking any steps to remove the cloud upon the title to this land, defying all prudential considerations, took steps to open up the mines and erect coke ovens for the purpose of manufacturing the coke. It thus appears that they were fully apprised of the claim of the plain-

tiffs. It was an easy matter for the defendants to have instituted their action at law, and, as ancillary to such action, to have filed their bill in equity to have removed the cloud upon the title. But it does not appear that they took any such steps. On the contrary, they not only disregarded, but entirely ignored, the notice given by the plaintiffs. It is true that the plaintiffs to this cause did not institute their action for the recovery of this land until some four years after the lessees had taken possession of it. That is accounted for by the fact that one of the owners of the land was in ill health, and was traveling in foreign countries for the recovery of his health, and that a difference existed between the plaintiffs as to their relative rights to the title to this land, whereby the legal proceedings which would have ordinarily been begun earlier were delayed. Can it be said that parties who claim lands, pay their taxes, and give notice of their claims to the persons who claim adversely to them, are guilty of laches, when they do everything that is necessary to protect their rights, except the commencement of a legal action? I think not. It appears to me that ordinary prudence required the defendants to investigate fully their claim of title to this land, and to have taken the necessary legal steps to remove the cloud before they commenced their operations, and that it is a weak defense to insist that the plaintiffs in this action slept upon their rights. It seems to me that the plaintiffs could more properly impute laches to the defendants for failing to take notice of their claim before they undertook to develop the lands. The defendants in this action have been guilty of inordinate haste, and have not exercised ordinary prudence, nor a sound discretion, when they, in the face of the notices that were served of the claim that was asserted publicly by the plaintiffs to these lands, went on, in defiance of those notices, and commenced their mining operations. I am therefore of the opinion that there cannot be imputed to the plaintiffs in this action such neglect and laches as justifies this court in refusing the motion asked for upon that ground; and, while the court appoints a receiver in this cause, it is inclined to do that which will take care of, and, to a great extent, relieve the defendants from the inconvenience that may arise from the granting of this order. This can be done by permitting the defendants to execute a bond with good security to account for all revenues derived from the property in the event that the plaintiffs succeed in maintaining their action at law. The receiver will be required to look after the rents from time to time, and ascertain the amounts of rents and profits of the property, and file his monthly statement in the papers in this cause, so that at the termination of the litigation the court will know exactly the amounts of revenue derived from it. The bond given by the defendants must be conditioned to pay to the receiver, in the event of their failing to maintain the action upon their part, all such sums of money as may be turned over to them by the receiver from time to time until the termination of the litigation, and, in the event of the failure of the defendants to give bond, the receiver is directed to collect the revenues, and hold them subject to the future order of the court.