## HUGHES *et al.* v. GARRELTS *et al.*

No. 4072.   Opinion Filed October 15, 1912.

Rehearing Denied January 21, 1913.

(129 Pac. 43.)

**RECEIVERS** — Appointment — When Authorized.   Under section 5772, Comp. Laws 1909, where a party moving for a receiver shows that he has a probable cause of action, and that the rents, issues, and profits of the land in litigation are being removed, or there is danger of the same being lost, it is proper and right that the appointment should be made to hold them and prevent loss during the pendency of the litigation, and this without reference to the probable solvency or insolvency of the party against whom the proceedings are brought.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by Enoch H. Hughes and others against Carson H. Garrelts and others.   Judgment for defendants, and plaintiffs bring error.   Reversed and remanded, with instructions.

*Wood & Witten, E. J. Smith,* and *Cottingham & Bledsoe,* for plaintiffs in error.

*Belford & Hiatt,* for defendant in error Skelton.

*R. T. Potter* and *Stanford & Cochran* (*C. B. McCrory,* of counsel), for defendants in error.

DUNN, J.   This case presents error from an order of the district court of Okmulgee county denying application of plaintiffs in error and certain interveners for the appointment of a receiver to take, receive, and hold certain profits and rents pending litigation over the title of the land involved, until the determination thereof may be had.   The petition was filed on the 12th day of April, 1912, and is in form an ordinary action in ejectment, except that it sets forth the manner in which the plaintiffs derived their title, including the Creek law of descent and dis-

tribution, and prays for possession, damages, rents, and profits. In the second count thereof it is averred that the lands are oil lands, and that the defendants have developed the same for oil and gas and have produced large amounts therefrom, and are continuing to do so. The prayer is that plaintiffs' title be quieted and an account be taken of the oil and gas produced, and for general relief. The interveners, likewise claiming an interest in the property, joined in the application for a receiver. All of these parties claim as heirs of Moses Hughes, and of Jimmie P. Hughes, the latter of whom was an allottee of the Creek Nation. The defendants filed answer in which they deny plaintiffs' rights and aver that they are developing and operating the premises for oil and gas under a good and valid oil and gas lease, and denying that the corporation to which they are running the oil is of doubtful solvency, and aver that the same is able to respond in damages.

The evidence showed that between January 10, and May 10, 1912, oil had been run to the value of about $40,000, more than $30,000 of which had been paid to the defendants. Oil at the time of the trial was being produced at the rate of about 1,000 barrels a day, and was of the value of about 68 cents per barrel. The defendants made no showing, and the record contains none, of any right, title, or interest which they may have in and to the land, except it appears that L. S. Skelton, one of the defendants, executed a lease to the Okmulgee Gas Company, dated November 30, 1910, and the said company executed an assignment thereof to L. S. Skelton December 22, 1911. But little, if any, question is raised in this proceeding as to the title which plaintiffs and interveners assert. This question, however, is not before us for determination, nor was it necessary in order to qualify plaintiffs and interveners to be heard, for them to show that they had an absolute title to the land. The statute under which the proceeding is brought (section 5772, Comp. Laws 1909) reads as follows:

"A receiver may be appointed by the Supreme Court, the district court, or any judge of either, or in the absence of said judges from the county, by the probate judge: First, in an action by a vendor to vacate a fraudulent purchase of property, or by a

creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured."

By the foregoing it is seen that, where interest in property or fund or the proceeds thereof is probable, and where the property is being removed or is in danger of being lost, this is sufficient. *Willard Oil Co. v. Riley et al.,* 29 Okla. 19, 115 Pac. 1103. The evidence discloses that the oil which is being taken is being exclusively delivered to a concern called the American Refining Company, of which the defendant Skelton was unable to say whether the same was a domestic or foreign corporation, and whose president resided in St. Louis, Mo. Under these circumstances, in our judgment the conclusion reached by the trial court denying the application for a receiver to receive and hold the proceeds of this property until the final determination of the action was error. Appellate courts are generally slow to disturb the conclusion reached in such cases by trial courts for the reasons set out in the case of *Willard Oil Co. v. Riley et al., supra,* but in the present case, that plaintiffs' and interveners' rights and interests are probable is, from the showing made, beyond question, and the defendants made no showing of any kind or character disclosing that they possessed any interest whatever in this property further than that of having sunk oil and gas wells thereon for the purpose of enabling them to receive its products. In fact, from a reading of the record we are impressed that, viewing the magnitude of interests involved, they have not dealt with entire frankness with the court. It is almost, if not quite, patent that the purpose animating them has been that of delay and to secure as speedily as possible the entire product, for when the Prairie Oil & Gas Company notified them that it would no longer make returns to them for oil run during the litigation, there was prompt change made from it to the present concern, which makes payment in full. It is true that this is explained on the theory that it was in consonance with a previous contract, but the fact remains as stated.

Nor is it necessary, in order that plaintiffs be entitled to the relief demanded, that it be shown that the defendants or the concerns receiving the oil are insolvent. *Mead et al. v. Burk et al.,* 156 Ind. 577, 60 N. E. 338.

A discussion of the principles involved is contained in the case of *Ulman v. Clark,* 75 Fed. 868, from the United States Circuit Court of West Virginia, wherein it is said:

"It is laid down as a general principle by all the authorities that, where a party moving for the appointment of a receiver exhibits an apparently good title to the property in controversy, and that there is an imminent danger of the loss of the profits and rents of the property, a receiver may be granted for the preservation of the rents and profits *pendente lite*. High, Rec. sec. 576, and the cases there cited. And such I understand to be the law as laid down in Beach on Receivers. It is not alleged in this bill that the defendants to this action are insolvent at this time, or that there is a mismanagement of the property. On the contrary, it is conceded in the bill that there is no desire to take the property out of the hands of the parties who are operating it. The only purpose and object of this proceeding is to husband the rents and profits of this property pending this litigation, so that they may be turned over to the rightful owner of this property at the termination of it. This proceeding is in the nature of an ancillary proceeding to the action at law, and has for its one object and purpose the protection of the issues of this property. As we have seen, this application does not contemplate the change of the status of the realty itself. On the contrary, it is conceded by the bill that those who are operating the property as lessees should not be disturbed in their operations. If this motion contemplated the change of the possession of this property, it would involve a far different question than the one involved in the issue upon this motion. Numerous and various authorities have been cited by the defendants to show that the courts of equity will not entertain a motion to disturb the possession of a property pending a litigation in an action of ejectment; but such is not the motion in this case, and I do not see any valid reasons for refusing the motion asked for. There appears to be no desire upon the part of the plaintiffs to this action to interfere with the possession of the lessees of the property, but only, as I have said, to bring into the custody of the court the rents, issues, and profits of it, that they be husbanded and held to answer the judgment at the end of the litigation of the action at law. It is said that the granting of this motion would affect

the rights of the shareholders in this association, by depriving them of the revenues arising from the operation of the mines upon the land in controversy. This may be so, but is a court of equity to deny the right of parties to invoke its aid to preserve the rents and issues of a property which may be dissipated and scattered, and which may never be gathered together so as to respond to a judgment at law when obtained? Should a court permit parties who are scattered over the country—some in foreign countries, as appears in this case—to carry off the revenues arising from the rents and profits of this land, and turn over to the plaintiffs, if they obtain a judgment at law, a series of vexatious lawsuits to enable them to assert their judgment? Or, rather, is it not the duty of a court of equity, under such circumstances, to have the rents, issues, and profits in its custody, so that at the end of the litigation it may turn them all over to the rightful owner? It may be inconvenient to, and may work a hardship upon, the shareholders in this case; but a court of equity must look to the merits and the rights of the parties involved in the questions before it for consideration, and not to the hardships that may be the result of its action in reference to the legal rights of the parties concerned. * * * There is no effort or desire upon the part of the plaintiffs to this action to interfere with the subject-matter of the litigation in the ejectment case by the appointment of a receiver; but it is for the purpose of preserving from waste, loss, and destruction the rents and profits arising out of the property, so that they may, in the language of the chancellor in the Chase case found in [1 Bland (Md.) 206] 17 Am. Dec. 277, 'harvest and gather the fruits until the labors of the controversy are over.' It is clear to my mind that the plaintiffs have probable cause of action against these defendants, and that the benefit to be derived from such cause of action might be lost if a receiver was not appointed, and it is no answer to this position that these parties are responsible at this time."

The purpose of this proceeding is not to deprive the defendants of either the possession of the land or of the right to continue operation, but it is its purpose to see to it that the oil and gas produced goes to the one who is entitled thereto, and not those who are not entitled to it, and this cannot be determined until the final trial of the main action. That it is proper and right to thus hold the proceeds we think there can be no doubt. It will bring no substantial harm to any one and will be absolutely conducive to justice to all. ·

We have carefully considered all of the objections and contentions urged by counsel for defendants, but find the same not sufficient to overcome the manifest equities shown by plaintiffs and interveners.

The order of the trial court, therefore, denying the application for a receiver, is set aside and reversed; and this cause is remanded, with instructions to enter one in accord with this' opinion requiring him to demand and receive of the defendants and them to deliver the net proceeds of oil and gas produced on this land from the date of the institution of the original action and defendants to continue to deliver and him receive and hold the same subject to the final judgment in the case.

TURNER, C. J., and WILLIAMS and KANE, JJ., concur; HAYES, J., absent, and not participating.