M. O. ALLMON *et al.* Plaintiffs in Error, *vs.* THE SALEM
BUILDING AND LOAN ASSOCIATION *et al.* Defendants in
Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 6, 1916.*

1. CORPORATIONS—*rights of pledgee of stock certificates.* Under section 52 of the act relating to judgments, when stock certificates are pledged by delivery and indorsement in blank to secure the payment of promissory notes, such pledge, as between the parties, and as to all other parties, as owners, with actual or constructive notice thereof, is valid and binding although the transfer of the title to the pledgee is not made on the books of the corporation, and although, as between the corporation and the pledgee, the title does not pass in the sense that the corporation must recognize the pledgee as having legal rights as a member of the corporation.

2. SAME—*duty of a corporation as custodian and trustee of its shares of stock.* A corporation is by law the custodian of the shares of its stock, has power to protect the rights of everyone interested therein from unauthorized transfers and is responsible for an injury sustained by its negligence or misconduct in making transfers or cancellations of such stock.

3. SAME—*corporation must resist any transfer of shares on its books without surrender of certificates.* Where certificates are outstanding representing shares of stock, it is the duty of the corporation to resist any transfer of such shares on its books without the production and surrender of the certificates, and a violation of this duty renders the corporation liable to the real owner of the shares for their conversion, and it is so liable to *bona fide* holders, for value, of the old certificates.

4. SAME—*equity may compel transfer on the books to the equitable owner.* Equity will compel a corporation, under proper circumstances, to transfer on its books shares of stock to the owner of the equitable title and to issue to him certificates for the same.

5. SAME—*building and loan association is negligent in not demanding surrender of certificates of stock before cashing them.* A building and loan association is guilty of gross negligence in paying the withdrawal value of stock to one claiming to be the·owner, and who is the owner on the books, without requiring him to produce the certificates of stock for cancellation as provided in its by-laws, and if the stock was pledged the association is liable to the pledgee for the loss occasioned by its negligence.

6. Same—*pledgee of stock is not required to notify corporation of the pledge.* Section 52 of the act relating to judgments, which concerns pledges of stock certificates as collateral, does not require that a pledgee of stock shall notify the corporation that he has received it in pledge.

7. Same—*against what persons pledgees of stock are protected.* Section 52 of the act relating to judgments was intended to protect pledgees of stock not only against judgment creditors but, against all other persons claiming rights in the stock so pledged who are chargeable with actual or constructive notice of their rights.

8. Same—*negligence of secretary is chargeable to corporation.* Although notice to a director, when acting solely in his own private interest, is not notice to the corporation of which said director is an officer, yet the negligence of the company's secretary is the negligence of the company.

9. Laches—*when doctrine of laches will not be applied in denial of relief.* A court of equity will apply the doctrine of *laches* in denial of relief only where, from all the circumstances, to grant the relief, to which the complainant is otherwise entitled, will presumptively be unjust because of the delay.

Writ of Error to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. Thomas M. Jett, Judge, presiding.

Frank F. Noleman, and June C. Smith, for plaintiffs in error.

Kagy & Vandervort, for defendants in error.

Mr. Justice Duncan delivered the opinion of the court:

On and prior to January 28, 1904, John C. Stonecipher became the record owner of thirty-six shares of the capital stock of the Salem Building and Loan Association of the par value of $100 each at maturity, or approximately ten years from date, ten shares of which were executed and delivered by said association May 12, 1896, six shares thereof March 18, 1898, ten shares thereof December 31, 1898, and

275 — 22

ten of such shares October 5, 1899. On August 12, 1904, and on September 10, 1906, respectively, said Stonecipher executed and delivered to H. L. Allmon, for money borrowed of the latter, two notes of $2000 each, both due one year after date, with six per cent interest from date, and to secure the payment of said two notes, on said last date said Stonecipher delivered to said Allmon the said certificates for the thirty-six shares of said capital stock, indorsed by said Stonecipher in blank. Allmon died intestate February 7, 1908, leaving him surviving Mattie B. Allmon, his widow, and M. O. Allmon, Nellie H. White, Ida May Pullen and Tina V. Cole, plaintiffs in error, as his children and only heirs-at-law, all adults. The widow and heirs settled the estate of said deceased by agreement and without administration, and agreed that said children and heirs were to be the owners of said promissory notes and the said thirty-six shares of stock which were found among the assets of the deceased, and said widow, by her indorsement thereon, signified her transfer to them of all her interest therein, and all the debts of said deceased were paid. M. O. Allmon, as a fourth owner and as agent of his sisters aforesaid, collected the interest on these notes of John C. Stonecipher in 1908 and up to and including 1911, and his father had collected the interest thereon for the previous years. Without the knowledge of M. O. Allmon or his sisters John C. Stonecipher applied for and collected, after their maturity, from said building and loan association the amounts due on said certificates on June 18, 1908, January 28, 1909, and May 15, 1909, and said certificates were paid by said association without requiring the production of said certificates, or, so far as appears from the evidence, without actual knowledge or inquiry as to where said certificates were or as to their owners. Shortly after the certificates were paid to Stonecipher, M. O. Allmon called on John W. Larimer, secretary of said association, and inquired of him if Stonecipher held said stock in the association, and also informed

him that he and his sisters held them as collateral security, and was informed by Larimer that Stonecipher had collected all the money on said certificates and some interest, amounting in all to $3634.45. This was the first actual knowledge the association had of plaintiffs in error's interest in said certificates. Shortly before or after the last interest was collected on said notes, December 12, 1911, Allmon again called on Larimer, as secretary of said association, and obtained the dates of the several payments to Stonecipher of said certificates and wrote the date on each certificate on which it was paid. Stonecipher was adjudged a bankrupt in February, 1913. M. O. Allmon considered Stonecipher up to the first of the year 1912 financially responsible and that the notes were collectible directly from him, and he (Allmon) had at one time carried stock in the said association, and since his father's death was aware of the fact that certificates of stock therein mature in approximately ten years. He was a director for the Salem State Bank for the same time, and Stonecipher was a stockholder and vice-president of the same bank for a part of that time and then started a bank of his own. Stonecipher was a director in said association until shortly before he became a bankrupt, and at the times he collected the money on said certificates he had $25,000 worth of unincumbered real estate in his own name, and was then regarded as an honest and successful business man in and around Salem and as financially able to pay all his debts. The constitution of said association provided that transfers of stock therein may be made on payment of twenty-five cents to it for each share transferred, and that all transfers shall be made in the presence of the secretary, who shall record them in a book purchased and kept by him for that purpose alone, and that they shall also be indorsed on the certificates transferred. In each case the transferee shall be entitled to all the privileges of the original holder, but no transfer shall

be valid and complete until the foregoing provisions have been complied with.

Plaintiffs in error brought this suit in equity on April 15, 1913, in the circuit court of Marion county against said association and William A. Mills, trustee in bankruptcy of the estate of John C. Stonecipher, bankrupt, to compel the association to issue to them certificates of stock in said association of the par value of $3600, or to pay them the said notes and interest thereon, and for other and further relief in equity. Answers were filed to the bill by the defendants in error, and on a hearing the court, on the foregoing facts, found the issues for plaintiffs in error and decreed that the Salem Building and Loan Association pay to them, within forty days, $3600, and that upon payment thereof they surrender to the association said certificates of stock. On appeal the Appellate Court for the Fourth District reversed the decree of the circuit court and remanded the cause, with directions to dismiss the bill for want of equity. The record was brought to this court for review by a writ of *certiorari.*

Two principal questions, only, arise on this record for our decision: (1) Did the Salem Building and Loan Association become liable to plaintiffs in error, as pledgees of the stock in question, by paying to Stonecipher the withdrawal value of said stock without taking the precaution to require the stock certificates to be surrendered for cancellation; and (2) are plaintiffs in error barred by *laches* for failure to promptly bring their suit against said association.

It is well known that in commercial transactions with banks and business men certificates of stock are very often pledged as security for loans by merely assigning and delivering the certificates of stock and without any thought or intention of the assignees becoming owners of the stock other than such qualified ownership for security. It is not usual or customary in such cases for the stock to be transferred on the books of the company to a pledgee. More-

over, section 52 of chapter 77 of Hurd's Statutes, entitled
"Judgments," provides: "The share or interest of a stock-
holder in any corporation may be taken on execution, and
sold as hereinafter provided; but in all cases, where such
share or interest has been sold or pledged in good faith for
a valuable consideration, and the certificate thereof has
been delivered upon such sale or pledge such shares or in-
terest shall not be liable to be taken on execution against the
vendor, or pledgor, except for the excess of the value there-
of over and above the sum for which the same may have
been pledged and the certificate thereof delivered." This
court held in *Rice* v. *Gilbert,* 173 Ill. 348, that the meaning
and purpose of that section were to give more commercial
freedom to transfers of the stock for purposes of collateral
security than existed before and to make shares of stock as
nearly negotiable as possible. It was further held that as
between the parties to such a pledge, and as to all other
parties as owners with actual or constructive notice thereof,
such pledge was valid and binding although the transfer of
the title to the pledgee is not made on the books of the cor-
poration. As between the corporation and the pledgee in
such a transfer the full legal title does not pass to the
pledgee, and is not intended to so pass, in the sense that
the corporation must recognize the pledgee as the owner of
the stock having legal rights as a member of the corporation.
But a corporation is by law the custodian of the shares
of its stock and clothed with power sufficient to protect the
rights of everyone interested therein from unauthorized
transfers, and, like every other trustee, it is bound to exe-
cute the trust with proper diligence and care, and is respon-
sible for an injury sustained by its negligence or misconduct
in making transfers or cancellations of such stock. Where
certificates are outstanding representing shares of stock, it
is the duty of the corporation to resist any transfer of such
shares on its books without the production and surrender
of the certificates. A violation of this duty renders the cor-

poration liable to the real owner of the shares for their conversion, and it is so liable to *bona fide* holders for value of the old certificates. (10 Cyc. 614, 618; *Hall* v. *Rosehill and Evanston Road Co.* 70 Ill. 673.) Equity will compel a corporation, under proper circumstances, to transfer on its books shares of stock to the owner of the equitable title and issue to him certificates for the same. (10 Cyc. 605.)

The defendant in error building and loan association is by its by-laws required to demand a surrender of the certificate of stock before transferring its stock on its books and to indorse such a transfer on the certificate. A failure on its part to demand the surrender of the certificate of stock for cancellation before cashing it for a person claiming to be an owner who was not such, would render it no less negligent than its failure to demand the surrender of such certificate before transferring it on its books, and would thereby do the owner of the stock an injury equally if not more serious, and there can be no doubt of its liability for such injury. In the instant case it does not appear that the building and loan association demanded the surrender of the certificates of stock in question or made any inquiry concerning their whereabouts. It might be inferred that it relied on the provisions of its by-laws in regard to the transfer of its stock to protect it against the interests of any other than the record owner of the stock, and made no inquiry of Stonecipher as to the persons who had them and no demand for their return and cancellation. The argument made by its attorneys here is that it was not required to make such inquiry or demand, and that plaintiffs in error lost all right to maintain their action by not giving it notice of their rights and having the stock transferred on the books of the company before the stock was cashed. But the said statute does not require that a pledgee of stock so pledged shall notify the corporation that he has received it in pledge. The stock in this case was taken as a pledge to secure the loan and without any thought upon the part of either the

pledgor or pledgee that the latter should have the stock transferred on the books of the association. The most that it is possible to say in such a case is, that it was the duty of the plaintiffs in error to have the corporation make a memorandum on its books that they held the stock in pledge as collateral security. It was taken for security, only, for the loan so far as the record shows, and the statute was undoubtedly intended to protect pledgees in such cases not only against judgment creditors but against all other persons claiming rights in such stock so pledged who were chargeable with actual or constructive notice of their rights. We think that it was gross negligence in the secretary of the association to pay the withdrawal value of the stock to Stonecipher without requiring him to produce the certificates of stock for cancellation or to make any inquiry concerning the same. If Stonecipher had put up any sort of plea or excuse for not producing them and without disclosing the fact that they were pledged, it could and should have demanded some sort of indemnity for the re-payment of the same in case a better owner turned up, before cashing them. Inquiry of Stonecipher as to their whereabouts and a requirement that he produce them would undoubtedly have led to actual knowledge of the fact that they were pledged to plaintiffs in error. We think it is therefore not only chargeable with negligence but also with notice that it would have obtained but for such negligence, and that it rendered itself liable and is liable to plaintiffs in error for the value of the stock withdrawn and cashed by Stonecipher unless they have been guilty of such *laches* as would make it inequitable to allow them to recover against it. Any other conclusion would, as it seems to us, frustrate the evident intent of the statute to render such certificates of stock as nearly negotiable as practicable for the purpose of facilitating and carrying on the commercial and banking transactions of the State. This is also apparently in harmony with the law of other commercial States, and is supported by the

case of *Brown* v. *Union Savings and Loan Ass'n,* 69 Pac. Rep. (Wash.) 383, which is almost on all-fours with the instant case. It cannot be said in this case, as intimated by plaintiffs in error's counsel, that the said association had actual notice by reason of Stonecipher being a director in the corporation. Notice to a director, when acting solely in his own private interest, is not notice to the corporation of which said director is an officer, (*Home Bank* v. *Peoria Trotting Society,* 206 Ill. 9; 2 Thompson on Corporations, sec. 1655;) but the negligence of the association's secretary is the negligence of the association. *Prairie State Building Ass'n* v. *Nubling,* 170 Ill. 240.

The circumstances relied on by defendants in error to bar the equitable right of plaintiffs in error to maintain their suit are, that the association learned in December, 1911, for the first time, that plaintiffs in error were the owners of the shares of stock cashed by Stonecipher and that no demand was then made upon it for payment by plaintiffs in error, and that no intimation was given by them that they would hold the association liable on said stock until suit was brought fifteen months later and after Stonecipher had become insolvent. It is argued that if plaintiffs in error had promptly sued Stonecipher or the association, or had even made a demand on the latter for payment of the certificates, the money could and would have been collected from Stonecipher either by the association or by plaintiffs in error, and that the loss has happened by the delay in asserting their rights. We see no reason why the association could not have proceeded against Stonecipher at once after it learned that he had collected money from it that he was not entitled to and for which it was liable to plaintiffs in error. The association was at that time apprised of all the facts.

A court of equity will apply the doctrine of *laches* in denial of relief only where, from all the circumstances, to

grant the relief which the complainant would otherwise be entitled to, will, presumptively, be inequitable and unjust because of the delay. (*Coryell* v. *Klehm,* 157 Ill. 462.) The suit of plaintiffs in error was not barred by the Statute of Limitations. Plaintiffs in error did nothing to impair their security during the fifteen months of delay in bringing suit except to remain silent and to refrain from suing during that time. It is a well known rule of equity that where one of two parties must suffer on account of the fraud of a third party, and one of them by his fault or negligence has put it in the power of the third party to perpetrate such fraud, he must stand the loss. The association, as custodian of the stock books and of the funds collected for the payment of the certificates in question, occupied the position of a trustee for plaintiffs in error. It was its duty, as such trustee for plaintiffs in error, to require the certificates of stock to be surrendered to it before cashing them. It was the violation of that trust that permitted the fraud on plaintiffs in error to be committed. It would be inequitable, under the facts in this case, to permit the association to escape the consequences of its violation of its duty as such trustee by its counter-charge that plaintiffs in error have delayed the assertion of their rights and that by such delay the party who has defrauded both of them has become insolvent, when it was equally guilty of delay in pressing its demands against Stonecipher.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*