(No. 20210.—

THE CHICAGO MEDICAL SCHOOL, Appellant, *vs.* JOHN T. WILSON *et al.* Appellees.

*Opinion filed October 25, 1930.*

LEVISOHN & LEVISOHN, and HARRY EUGENE KELLEY, for appellant.

Roy Massena, (Harry W. Lippincott, and Edward C. Kesler, of counsel,) for appellee the City State Bank of Chicago; Harry J. Berman, for other appellees.

Mr. Justice Farmer delivered the opinion of the court:

The Chicago Medical School, a corporation, filed a bill in the superior court of Cook county during September, 1929, against certain persons named as defendants, praying that the court adjudge that the two pieces of real estate situated in the city of Chicago and described therein were acquired by complainant and held in trust on its behalf; that certain deeds purporting to convey title thereto from complainant to the Kenwood Hospital Association, a corporation, and from that association and Luella L. Bourque and N. Odeon Bourque to John T. and Hattie C. Wilson, be declared null and void, and that a writ of injunction issue restraining and enjoining defendants from asserting any claim or title to the premises, enjoining them from interfering with the possession or occupancy of complainant, and that complainant be adjudged and entitled to a writ of assistance to be put in possession of the premises which John T. and Hattie C. Wilson now assert title to, and for general relief. Defendants demurred to the bill on the ground that complainant had been guilty of *laches,* and on other grounds not necessary to mention as we view the case.

The bill is a very lengthy one and states a rather complicated state of facts. It will not be necessary to go into it in full detail, but the outstanding facts alleged by the bill as amended are, that in 1911 Dr. Luceman, of Chicago, proposed to certain physicians in that city to organize a medical college and hospital with funds which had been contributed by certain persons for such purpose and an additional amount to be secured for that purpose. Some additional amounts were subsequently subscribed and the organization perfected. Dr. N. Odeon Bourque was permitted to have charge of the organization. He proposed to

those present that a corporation not for profit be organized under the statutes of Illinois and that the business affairs be under a board of directors composed of three persons, and also a plan of holding title to any real estate to be used by the proposed corporation in one or more trustees. In January, 1912, Dr. Bourque, Dr. Luceman and Dr. Landwer filed with the Secretary of State an application for the organization of a corporation not for profit, to be called the Chicago Hospital College of Medicine. Its management was to be vested in a board of three directors, to be elected annually, and the three signers of the application were named as the three directors for the first year. A charter was issued by the Secretary of State and recorded December 24, 1914. The name of the corporation was changed in 1919 from the Chicago Hospital College of Medicine to the Chicago Medical School. In 1924 a certificate was filed showing the adoption of a resolution by the board of directors increasing the number of directors of the corporation from three to seven. The bill charges there was no record of the proceedings of any meetings of the members or directors of the corporation from the year 1912 to 1924, and that a search of the records in the office of the recorder of deeds of Cook county failed to disclose any certificate recorded of the election of directors of the corporation between the years 1912 and 1924. The bill charges the books and records of the corporation were taken away or destroyed by persons connected with the management of the hospital and college, and no definite evidence showing the rights of complainant in the premises was discovered until the year 1929.

In 1923 Dr. Hill, Dr. Goetsch and Dr. Louis, who were all made defendants in the amended bill, executed a certificate for the organization of a corporation not for profit to be known as the Kenwood Hospital Co-operative Association, and they filed the certificate with the Secretary of State. The application stated the management of the pro-

posed corporation was to be vested in a board of three directors and that for the first year of its organization those making the application were to act as directors. A certificate of complete organization was issued by the Secretary of State as required by law. The bill alleges that nothing can be ascertained of the internal affairs of this corporation save a certificate filed September 15, 1927, in the recorder's office of Cook county, which purports to be a record of the meeting of the members of the hospital association held September 10, 1927, in which it is stated that Dr. Zahn, Dr. Policoff and W. J. Bourque were all members of the association. The certificate was executed by Dr. Zahn as president and Bourque as secretary. The bill alleges a search of the Cook county records has failed to disclose any certificate of a subsequent election of directors, trustees or managers of the Kenwood Hospital Co-operative Association. Persons named as members of this association were either members of the faculty or officers of the Chicago Medical School.

In accordance with the scheme of organization proposed by Dr. N. Odeon Bourque, deeds of conveyance of real estate acquired in behalf of the Chicago Medical School were executed and placed in the hands of William Forkell, N. Odeon Bourque and B. J. Zahn in trust, which condition was evidenced by a statement under oath of the parties mentioned, and filed about October, 1917, with the Department of Registration and Education at Springfield, Illinois. The instrument was in the following words:

"*To whom concerned*—We, the undersigned, trustees of the Chicago Hospital College of Medicine, do hereby state that we are and have been holding the trust deeds of the property known as the Chicago Hospital College of Medicine, located at 3830-4 Rhodes avenue, and the Fort Dearborn Hospital, located at 3831-5 Vernon avenue, Chicago, Illinois, for the sole benefit of said Chicago Hospital College of Medicine, also the mortgage on the former property.

WILLIAM FORKELL,
N. O. BOURQUE,
B. J. ZAHN."

That paper was not discovered by complainant until about two weeks before the original bill was filed.

The bill alleges N. Odeon Bourque used funds belonging to complainant in the purchase of the vacant premises at 3831-35 Vernon avenue, Chicago, from Frederick H. Bartlett and wife by warranty deed, wherein Luella L. Bourque was named as grantee. Part of the purchase price was paid by Bourque giving notes secured by a trust deed, and these were paid with funds which the bill alleges were the property of complainant. The bill alleges that in 1914 a hospital building was erected on the Vernon avenue premises so purchased, and the cost of the building was paid with funds of complainant obtained by Bourque; that the building was equipped with an operating room, hospital equipment, bed-rooms and dining rooms, the expense of which was more than $100,000, and was known as the Fort Dearborn Hospital. In 1913, the bill alleges, complainant furnished funds to acquire title to the premises known as 3830-34 Rhodes avenue, which were improved with a building to be used as a medical school. The premises were purchased from John R. Montgomery and wife and were conveyed by warranty deed to Luella L. Bourque, and on September 1, 1914, she and N. Odeon Bourque, her husband, executed a warranty deed conveying the premises to the Chicago Hospital College of Medicine. The bill alleges complainant conducted its school of medicine at 3830-34 Rhodes avenue, and also the hospital at 3831-35 Vernon avenue, until December, 1924, using its own funds to operate them. The bill alleges that the Kenwood Hospital Co-operative Association and John T. and Hattie C. Wilson assert they came into possession of the hospital premises in 1923, but complainant asserts their claim is without any substantial merit, as the transactions of the parties in causing the title to be conveyed to the Wilsons was part of the fraudulent scheme and conspiracy in which the parties participated with the object of defrauding com-

plainant of the title to this property. The bill alleges complainant did not discover the condition of the title of the hospital premises and the evidence in support of the claim until a short time prior to the filing of the original bill and that within five years after the discovery of these facts the bill was filed. No meetings were held by complainant from 1912 to 1924 at which vacancies occurring in the board of directors were filled, but the bill alleges Bourque selected persons who would be subservient to his wishes, executing such papers as he or his attorney caused to be prepared, to attain the object of acquiring and holding complainant's property. The bill alleges that after the election in 1912 such persons, under the direction of Bourque and his wife, executed papers connected with the title to the premises upon which the hospital was built and the school located, purporting to be the corporate act of complainant, but the bill alleges that the instruments were null and void under the Illinois statutes and were not within the powers of the attorneys or persons who executed them; that all such deeds and instruments were fraudulent, and for that reason complainant filed its bill to be relieved from the fraudulent acts and doings of the persons named. Hill, Zahn and Bourque claim they were directors of the complainant in 1913, and Hill claimed he was elected president, Zahn secretary and Bourque treasurer.

The bill alleges that Drs. Hill, Goetsch and Louis, in order to aid Bourque and his wife, Luella, signed an application for the organization of a corporation not for profit under the name of Kenwood Hospital Co-operative Association about August, 1923. The application was filed with the Secretary of State and a certificate of incorporation was issued, and Hill, Goetsch and Louis were named as directors for the first year. The bill alleges they were all members of the faculty of the Chicago Medical School. Bourque resigned from complainant in December, 1923, and Dr. Augustus O'Neill was elected to fill the vacancy. Hill

resigned as president of complainant and was elected treasurer. Zahn claims he resigned as a member of the board of directors and as secretary in February, 1924, and Dr. Albert Horn was elected in his stead. Hill claims to have resigned as treasurer at a meeting in February, 1924, and Dr. Albert E. Mowry was elected in his place. January 5, 1924, Dr. Hill, describing himself as president of complainant, addressed a letter to Dr. J. T. Wilson, one of the defendants, relative to teaching privileges, etc., delegated to the Chicago Medical School, in the Fort Dearborn Hospital. The bill alleges Bourque and his wife, in order to defraud complainant of money and property, caused Hill and Zahn to act as officers of complainant, and they procured Hill, Zahn, Louis, Goetsch, Policoff and W. J. Bourque to aid them to carry out their will and suggestion and secure the proceeds of the sale of the hospital premises, to execute papers purporting to be the acts of the Kenwood Hospital Co-operative Association and complainant. September 8, 1923, Hill pretended to execute a deed of conveyance to the premises located on Vernon avenue to the Kenwood Hospital Co-operative Association for the consideration of one dollar and other good and valuable consideration. The bill alleges that in 1923, or prior thereto, no meetings had been held, as required by the laws of Illinois, for the purpose of passing on the question of sale, lease or other disposition of the real estate, and Hill did not receive any authority from the board of directors or members of the corporation to execute such conveyance, and it was null and void and of no effect and was in violation of the trust whereby complainant held all property acquired by it in trust for the purposes described in the amended bill and in complainant's charter. The bill alleges complainant received no consideration therefor, and that Bourque, Hill and Zahn proceeded to execute another instrument purporting to be a quit-claim deed from the Chicago Medical School conveying to the Kenwood Hospital Co-operative Association

the disputed premises, in which it is recited it was given to correct the deed dated September 8, 1923. The bill charged that the deed was null and void as the sale was never authorized by a majority of the members of the corporation, and because Hill and Zahn were neither *de jure* nor *de facto* directors of complainant, and it was a fraud upon the rights of complainant.

February 4, 1924, a quit-claim deed was recorded from Luella L. Bourque and N. Odeon Bourque to the Kenwood Hospital Co-operative Association for the hospital property on Vernon avenue. The instrument purported to have been executed March 27, 1923, and the bill alleges the deed was null and void, as Luella L. Bourque had theretofore conveyed her right, title and interest, which was that of a trustee, to complainant by a deed dated September 1, 1915. The bill alleges complainant, to protect its interest in the real and personal property, on July 14, 1924, adopted a resolution repudiating the quit-claim deed of December 27, 1923, conveying to the Kenwood Hospital Co-operative Association the hospital premises on Vernon avenue, and repudiated several other instruments and documents wherein the properties of complainant were involved and stating the reason why it did so. The bill alleges that complainant being advised of the condition of the title to its school building and hospital premises, on July 16, 1924, caused notice to be given to John T. Wilson and wife, who are defendants to the bill and who made claim of some right, title or interest in the premises, that complainant owned the property in fee simple, clear of any lien or interest, and that they should make no attempted purchase thereof, etc. The bill alleges that on October 24, 1924, there was filed in the recorder's office of Cook county an affidavit purporting to have been sworn to before a notary public in the State of Tennessee, in which Wilson stated that on the 6th day of December, 1923, he purchased from the Kenwood Hospital Co-operative Association complainant's hospital property.

The affidavit had attached thereto an abstract of a purported contract of sale of the property executed on behalf of the Kenwood Hospital Co-operative Association by Charles Hill, as president, and J. T. Wilson. The affidavit was filed subsequent to the notice served on Wilson and wife during July, 1924. The bill also alleges that on June 28, 1927, the Kenwood Hospital Co-operative Association, without lawful right to do so, executed a quit-claim deed to the hospital property to Wilson and wife, which deed was accepted by them in disregard of complainant's rights; that the grantees named in that deed pretended to convey the premises to the City State Bank of Chicago, a defendant named in the bill, by trust deed dated December 1, 1928; that the bank had notice of the rights and interest of complainant in the property and acquired no title or interest in the premises by the deed.

By amendment to the amended bill further allegations appear therein concerning an action commenced in October, 1927, in the circuit court of Cook county by the South Park Commissioners for the condemnation of the Vernon avenue hospital premises for park purposes, wherein complainant appeared and contested the same during May and June, 1928, and that the Wilsons and the City State Bank, trustee, also entered their appearance and were represented in court. This litigation resulted in a judgment for $45,000 for the premises and provided for the immediate taking of possession thereof. The bill alleges complainant did not discover evidence sustaining the charges of fraudulent acts on the part of defendants until a short time before the bill was filed.

The foregoing is not a complete statement of the allegations of the bill, but we think it will serve to show the status of the case made by the bill as amended.

The principal and material question discussed by both parties in the briefs is that of *laches*. The bill does not on its face show that complainant was guilty of *laches*. A court of equity will apply the doctrine of *laches* in denial

of relief only where, from all the circumstances, to grant the relief to which the complainant would otherwise be entitled will presumptively be inequitable and unjust because of the delay. (*Allmon* v. *Salem Building Ass'n,* 275 Ill. 336; *Coryell* v. *Klehm,* 157 id. 462.) The defense of *laches* can be considered only when by delay and neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property involved had the right been properly asserted. (*Troyer* v. *Erdman,* 320 Ill. 140; *Neidhardt* v. *Frank,* 325 id. 596; *Schultz* v. *O'Hearn,* 319 id. 244; *Dixmoor Golf Club* v. *Evans,* 325 id. 612.) Complainant in 1924 discovered some evidence of the state of affairs of its business and property and served notice on the Wilsons before they acquired their deed to the property. Complainant had no minutes or records and did not then know of the existence of the affidavit of Forkell, Bourque and Zahn on file in the Department of Registration and Education at Springfield and did not discover it until a few weeks before the bill was filed. This was properly set up in the bill.

The facts set forth by the allegations in the bill create a situation somewhat similar to that in the case of *Ullman* v. *Clark,* 75 Fed. 868, wherein it was held that *laches* could not be imputed to a party who delays bringing an action for the recovery of land when the adverse party had full notice of the claim of title of the party suing, unless the delay, under all the circumstances, is unreasonable. The Statute of Limitations had not run against complainant.

The point is made by appellees that the bill did not allege complainant was in possession of the premises or any part thereof. Where an action is brought solely to quiet title it is necessary to allege the complainant is in possession of the premises or that they are vacant and unoccupied, but where the primary relief sought is upon other well established grounds and the removal of the cloud is only an in-

cident to such relief the bill need not allege that complainant is in possession of the property. *Ward* v. *Clendenning,* 245 Ill. 206; *Blake* v. *Blake,* 260 id. 70; *Nowakowski* v. *Sobeziak,* 270 id. 622.

Some other points are discussed in the briefs, but the principal and important question is whether complainant is barred by *laches.* We hold that it is not.

The decree of the superior court of Cook county is reversed and the cause remanded, with directions to overrule the demurrer. *Reversed and remanded, with directions.*