## MATTISON–GREENLEE SERVICE COR-PORATION v. CULHANE.

### No. 6637.

Circuit Court of Appeals, Seventh Circuit.
March 11, 1939.

Rehearing Denied May 13, 1939.

C. H. Linscott, of Rockford, Ill., for appellant.

Robert K. Welsh and Carleton K. Welsh, both of Rockford, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Plaintiff was the sales agent for two local Rockford Companies. They were engaged in manufacturing non-competing machine tools. Their businesses were large, and plaintiff, as the selling agent of both companies, transacted business which ranged from $750,000 to $3,000,000 a year. Plaintiff received many commission checks which its bookkeeper Charles W. Beach deposited to its credit in defendant's bank, using a rubber stamp endorsement, which was as follows:

"Pay to the order of
"The Manufacturers Nat'l Bank of Rockford, Ill.
"Mattison-Greenlee Service Corp.
"(or Machinery Methods, Inc.)"

Beach's authority was limited to endorsing and depositing the checks. The bank was notified that he could endorse only for deposit to the account of plaintiff.

Beach accomplished his embezzlements in three ways: (1) Presenting for deposit, for example, a $100 check, obtaining the payment to him of $50 cash and depositing the balance; (2) cashing a check and taking the whole proceeds; (3) depositing a check and receiving a draft for its full or partial value. The company failed to detect the employee's abstractions for ten years—only after the discovery of a forgery in a second bank of deposit did the nefarious transactions come to light.

The failure to discover the thefts earlier was due partly to the nature and volume of plaintiff's business. It had annual audits made throughout the period of embezzlement by an accountant employed in an affiliated company, but the embezzlements were never discovered.

Beach's course of business is described in the agreed statement of facts as follows: Upon the receipt of checks from purchasers of goods Beach "would take the checks to the bank, write out a single deposit slip, put the total amount of checks offered for deposit and below that footing insert an item representing the proposed withdrawal. He carried that item under the total of the checks offered for deposit and subtracted the amount of the proposed withdrawal from the total of the offered checks, leaving a net amount. Opposite the item representing the proposed withdrawal was written the word 'cash' or 'draft.' The bank then accepted the checks offered for deposit, paid to Beach in cash, draft or cashier's check, as the case might be, the amount of the item deducted from the total of the checks offered. No order or voucher of any kind other than this single deposit slip was given to the bank representing the withdrawal by Beach. A pass book, furnished by the bank, was presented by Beach, and in all instances of these gross deposits there was entered at the time of deposit the net amount only of the deposit, the amount shown after

**610**

deducting the withdrawal item. The total amount of check or checks actually deposited in no instance appeared in the pass book. The bank then carried into its own record of the plaintiff's deposit account only the net item—the same as was entered in the pass book. After the deposit was completed and the entry made, the pass book was delivered to Beach and kept in plaintiff's files. Duplicate deposit slips were not made. All deposit slips were retained by the bank."

Beach began his embezzlements October 13, 1926, and continued them until June, 1931, when the bank closed. There is no dispute as to dates or amounts. The plaintiff thereafter opened an account in another bank. It was on the discovery of a forged item by the second bank in 1936 that the disclosure of Beach's embezzlements came about and that plaintiff began an investigation and discovered the embezzlements in its account in defendant bank, for which recovery is here sought.

When defendant bank closed, plaintiff had $6,000 on deposit on which approximately a 61% dividend has been paid.

Defendant argues:

First, plaintiff should have brought an action at law, in which event its cause of action would have been barred by the Illinois five year statute of limitations. Its suit in equity is in no better position and should be barred for laches.

Second, plaintiff owed a duty to the bank to examine the bank statements within a reasonable time (statement called for ten days) and so assist the bank in the detection of errors or fraud. The bank is relieved of liability where the depositor for ten years fails to discover its employee's embezzlement.

Third, plaintiff was guilty of negligence which barred its right to recover because it should have known from its own books that Beach was embezzling.

Fourth, it was error to refuse to allow defendant to show that it was customary banking practice in Rockford to permit cash withdrawals when making deposits of checks, for it appeared that plaintiff's officers were officers of another bank in Rockford and knew of such practice.

Plaintiff, meeting these contentions of defendant, denied the charge of laches; asserted it had no means of ascertaining from its books that Beach was embezzling; that its volume of business pre-

vented it from ascertaining its loss; that the bank was acting contrary to plaintiff's instructions which no custom to the contrary could change; that certain of the bank's employees knew Beach was unlawfully and illegally withdrawing funds which belonged to plaintiff; that the receiver of defendant bank was a trustee of the assets in his hands; that upon his appointment all claimants' rights became fixed (or frozen) so that the statute of limitations ceased to run—was tolled.

The issues are narrowed by defendant's admission of unauthorized action by a bank employee who allowed a depositor's agent to withdraw part or all of a deposit contrary to the instructions of the depositor.

The District Court found:

"Plaintiff was not negligent in failing to discover Beach's embezzlement * * *. Plaintiff is chargeable only with knowledge of such acts as a reasonable examination of the bank statements by an honest agent would reveal * * *.

" * * * the plaintiff was not guilty of any negligence in the performance of any duty which it owed to the bank with reference to checking bank's monthly statements and the cancelled checks furnished and delivered by the bank to the plaintiff."

Elaboration of these findings appears both in the court's opinion and in its findings. The court was apparently convinced that the bank's failure to give a duplicate slip of deposit and the fact that the pass-book showed only the net transaction (did not show total amount of checks presented and cash withdrawn) account for plaintiff's failure to detect the embezzlement at an earlier date. These facts coupled with the large volume of its business excused plaintiff for its failure to discover its bookkeeper's embezzlements.

▬ Laches is not established by proof showing only lapse of time. There must be not only lapse of time, but acquiescence in the continuance of the *status quo.* Southern Pac. Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099; Gildersleeve v. New Mexico Min. Co., 161 U.S. 573, 16 S.Ct. 663, 40 L.Ed. 812; Cases collected in Longsdorf, Cyclopedia of Fed. Procedure, Sec. 676, et seq.; Ruling Case Law, "Equity," Sec. 143, et seq.; Ancient Egyptian Arabic Order v. Michaux, 279 U.S. 737, 49 S.Ct. 485, 73 L.Ed. 931; Hoyt

v. Sprague, 103 U.S. 613, 26 L.Ed. 585; Hayward v. Eliot Nat. Bank, 96 U.S. 611, 24 L.Ed. 855; Menendez v. Holt, 128 U. S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Marsh v. Whitmore, 21 Wall. 178, 22 L.Ed. 482; Vermilion County Home v. Varner, 192 Ill. 594, 61 N.E. 830; Blaul v. Dalton, 264 Ill. 193, 106 N.E. 196; Chicago Medical School v. Wilson, 341 Ill. 170, 173 N. E. 168.

■ There cannot be acquiescence without actual or constructive knowledge. In this case the knowledge, if any, was not actual. Our doubt is over the soundness of the court's finding as to the absence of constructive knowledge.

We would the more readily accept the court's finding if it did not include what might be called a conclusion based on inference. We confess to an inability to sympathize with, or accept the statement that a depositor may fail to detect for ten years, its agent's embezzlement of over $56,000 growing out of deposits of money in a bank, and still be without negligence. A bank that has been closed for the last five of said ten years may have a more appealing and persuasive argument than an individual, especially if the complaining depositor had a substantial account with the bank when it closed and knew that the receiver was making dividend payments of large amounts, on the basis of and in reliance on depositor's claim filed several years previous, which did not include the embezzlement claim in question.

We place our decision on both grounds: First, the impairment of the rights of depositors if plaintiff be permitted to assert its stale claim and second, the Illinois statute of limitations. The applicable sections read (Chap. 83, Smith-Hurd Ill. Stats.):

Sec. 23. "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

Sec. 16. "Actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued."

As before stated, the first embezzlement occurred October 13, 1926. Attached hereto is a partial statement of the shortages.[1] Plaintiff brought suit on the 11th day of June, 1936.

■ As we construe the Illinois decisions the statute of limitations began to run

[1]

| Year | Total Amount of Checks Deposited† | Amount of Cash Turned Over and Drafts delivered and Paid to Beach out of said Checks and Deposits |
|---|---|---|
| 1926 | ? | $ 90.63 |
| 1927 | $ 32,978.24 | 4,284.24 |
| 1928 | 52,962.04 | 14,981.76 |
| 1929 | 32,223.49 | 27,440.44 |
| 1930 | 33,395.70 | 7,449.18 |
| 1931 | 15,462.18 | 2,364.33 |
| | $167,021.65 | $56,610.58 |

† The agreed statement of facts discloses five schedules of abstractions only two of which set forth the amount of deposits as well as of abstractions, so that this is an incomplete item.

Two of the Schedules are herewith consolidated, and set forth showing the transactions for the year 1929:

| Date | Total Amount of Checks Deposited | Amount Taken by Beach |
|---|---|---|
| 1-3-29 | $ 58.36 | $ 27.38 |
| 1-8 | 5,098.48 | 166.26 |
| 1-18 | 1,875.75 | 1,875.75 |
| 2-5 | 4,859.05 | |
| 3-19 | .36 | .36 |
| 4-5 | 2,445.00 | 2,445.00 |
| 4-12 | 57.14 | 57.14 |
| 4-18 | 2,250.00 | 45.00 |
| 4-25 | 323.50 | 226.75 |
| 5-8 | 1,001.36 | 24.74 |
| 5-20 | 201.84 | 201.84 |
| 5-23 | 25.20 | 25.20 |
| 6-14 | 397.20 | 397.20 |
| 8-6 | 47.58 | 22.00 |
| 8-26 | 2,285.00 | 68.55 |
| 8-31 | 2,216.45 | 2,216.45 |
| 10-9 | 543.07 | 23.19 |
| 10-18 | 40.00 | 40.00 |
| 11-15 | 3,455.00 | 3,455.00 |
| 11-21 | 5,000.00 | 130.07 |
| 12-14 | 43.15 | 43.15 |
| | $32,223.49 | $11,491.03 |

against the plaintiff as soon as it was damaged by its agent's embezzlements, that is to say, when the bank breached its contract and its duty to plaintiff, a depositor. Davis v. Munie, 235 Ill. 620, 85 N.E. 943; Lake Shore Bldg..v. City of Chicago, 207 Ill.App. 244; Indiana, Illinois & Iowa Railway v. Patchette, 59 Ill.App. 251; McConnel v. Kibbe, 33 Ill. 175, 85 Am. Dec. 265.

The bank's mistake in permitting said agent to make cash deductions from the checks which were presented for deposit gave rise to a cause of action in depositor's favor. It must be and is conceded that the bank became liable for such unauthorized payments. The statute of limitations began to run against the plaintiff immediately upon the happening of the transaction.

The bank, however, did not "fraudulently conceal the cause of action from the knowledge of the person entitled thereto," and as a result the statute was not tolled by plaintiff's failure to discover its loss. Keithley v. Mutual Life Ins. Co., 271 Ill. 584, 111 N.E. 503; Wood v. Williams, 142 Ill. 269, 31 N.E. 681, 34 Am. St.Rep. 79; Parmelee v. Price, 208 Ill. 544, 70 N.E. 725; Fortune v. English, 226 Ill. 262, 80 N.E. 781, 12 L.R.A.,N.S., 1005, 117 Am.St.Rep. 253, 9 Ann.Cas. 77.

The more serious question arises over plaintiff's contention that the appointment of a receiver was in effect the appointment of a trustee for all of the creditors of the bank, including plaintiff, and the statute of limitations was therefore and thereby tolled. It is significant that the statute of limitations had begun to run before the appointment of the receiver.

Moreover, the decisions of Illinois courts do not recognize a tolling of the statute of limitations where the trust is not an express one. Lancaster v. Springer, 239 Ill. 472, 88 N.E. 272; Note in 21 A.L.R. at page 961; Albretch v. Wolf, 58 Ill. 186; Governor v. Woodworth, 63 Ill. 254; Hayward v. Gunn, 82 Ill. 385; Waterman Hall v. Waterman, 220 Ill. 569, 77 N.E. 142; Geddes-Brown Shoe Co. v. Suttle, 145 Ill.App. 407; Dowland v. Staley, 201 Ill.App. 6.

Where the statute of limitations has begun to run, it is ordinarily not suspended unless the statute so provides. People v. White, 11 Ill. 341; Tilton v. Yount, 28 Ill.App. 580; Brown v. Moore, 26 Ill. 421, 79 Am.Dec. 383; Keil v. Healey, 84 Ill. 104, 25 Am.Rep. 434; Calumet Elec. St. Ry. Co. v. Mabie, 66 Ill.App. 235; Nonotuck Silk Co. v. Pritzker, 143 Ill.App. 644.

In other words, a receiver named for the bank may be a trustee for all of the creditors in a certain sense, but the statute of limitations which is running against a claimant of the bank, such as plaintiff, continues to run against such complainant for the reason that the said receiver (or trustee) of said bank is not the trustee of an express trust. See notes in 28 A.L.R. 1435; 67 A.L.R. 1121; 103 A.L.R. 1147.

The statute of limitations is pleadable in a suit in equity where, as here, the cause of action is legal in nature. 17 Ruling Case Law, 735, 736; 19 Am.Jur. 343.

We hesitate to reject the findings and conclusions of the trial court on the issue of laches. Though reluctant so to do, we are unable to absolve plaintiff of its long and inexcusable delay in ascertaining and asserting its rights.

Plaintiff contends that its business was large. Is this a good excuse? Ordinarily, we would say No. Being large it could afford to employ accountants. Its books and accounts could and should have been well kept. Discrepancies should have been promptly discovered. We find nothing complicated or involved in plaintiff's business or its bookkeeping,—nothing that would deceive an ordinary bookkeeper or accountant. Failure to detect the embezzlements was due to plaintiff's confidence and trust in its employee and its failure to check his books. When the first embezzlement was discovered, plaintiff had no difficulty in discovering the other embezzlements. This is rather conclusive proof that it was misplaced confidence in Beach and not the difficulties of a large business that explains the lapse of ten years before the plaintiff discovered the shortage.

That defendant was injured by plaintiff's failure to assert its claim is obvious. This is not a controversy between plaintiff and the bank. It is between other depositors and the plaintiff. What is paid to the plaintiff must be deducted from depositors' dividends. Moreover, the dividends which have been paid were upon an indebtedness basis, inconsistent with the inclusion of the $56,000 claim here involved.

Likewise, we cannot escape the conclusion that we must charge plaintiff with constructive knowledge of its employee's embezzlements. It is chargeable with what in the exercise of reasonable care it would have discovered. If a depositor in a bank who receives monthly statements, in the absence of any fraudulent concealment by the bank, is not derelict,—may fail for ten years to find a shortage in its bookkeeper's transactions and still successfully assert diligence, it is indeed hard to conceive of a case where laches may be established save by proving actual knowledge.

The decree is reversed with directions to proceed in accordance with the views herein expressed.